504 So.2d 575 (1987)
Beverly JONES, et al.
v.
Ronald GILLEN, et al.
No. 86-CA-524.
Court of Appeal of Louisiana, Fifth Circuit.
February 9, 1987.
Rehearing Denied April 16, 1987.
Writ Denied June 19, 1987.
*576 Donelon & Donelon, Clement P. Donelon, Metairie, for plaintiffs-appellants.
Dalton, Gillen & Roniger, Gregory W. Roniger, Jefferson, for Ronald Gillen, Arline Bordes Gillen, Richard J. Gillen and Janet Gillen Robinson, defendants-appellees.
Before CHEHARDY, C.J., and WICKER and GOTHARD, JJ.
CHEHARDY, Chief Judge.
This appeal arises from a summary judgment granted in favor of defendants, Ronald Gillen, Aline Gillen, Richard Gillen, Jr., and Janet Gillen Robinson. The plaintiffs, Beverly and Richard A. Jones, are the parents of Richard A. Jones, Jr., a 14-year-old boy who drowned while swimming in the Simolusa Creek. The creek flows behind Land-O-Pines campground, the defendants' lessee. At issue is whether the documents submitted with the motion for summary judgment show the child did not drown on property owned by or under the control of defendants and, if so, does that fact or any other undisputed fact entitle defendants to a judgment as a matter of law.
According to the record, Richard A. Jones, Jr., the deceased, joined his friend Chad Savoie and his family for a camping trip to Land-O-Pines campground one weekend in 1981. The family regularly rented a campsite on the grounds which provided a swimming pool, slide and gameroom for the entertainment of the campers. In its brochure, it also advertised a beach area adjoining the Simolusa Creek located at the rear of the property. Signs were posted directing the customers to the beach, but warnings were also posted to "Swim At Your Own Risk."
On the day following their arrival, the swimming pool was closed for repairs. As a result, Richard and Chad went to the beach to swim, with permission of Chad's parents. Both boys were good swimmers and began diving from a stump into a deep hole of the river, which was apparent by its darker color. After several dives, Richard entered the deep water and failed to return to the surface. A search ensued and Richard's body was ultimately recovered from the hole by Bruce Albert, who happened to have scuba equipment with him.
Following the accident, Beverly and Richard Jones sued numerous parties, including the defendants named herein, for the wrongful death of their son. The Gillen family defendants subsequently filed a motion for summary judgment alleging they cannot be held liable since the death did not occur on their property. After a hearing the trial judge granted the motion for summary judgment.
On appeal, plaintiffs contend the summary judgment was improperly granted because the defendants are deemed to have admitted the death occurred on their property since they failed to timely answer plaintiffs' request for admission. Secondly, plaintiffs contend the summary judgment should be reversed because the affidavits upon which the defendants relied are incompetent in that they were not made on personal knowledge of affiants. Finally, plaintiffs claim, assuming arguendo defendants' assertions are true, they are not legally exempt from liability for their alleged negligence by the mere fact the accident may have occurred on adjacent property. Consequently, plaintiffs conclude that numerous issues of disputed material fact exist which preclude a summary judgment.
A summary judgment is properly granted only where "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." LSA-C.C.P. art. 966. This procedural device is not to be used as a substitute for trial on the merits, and all doubts concerning material issues of disputed facts must be resolved against granting the motion for summary judgment. Kinney v. Hutchinson, 449 So.2d 696 (La.App. 5 Cir.1984); Gatlin v. *577 Coca-Cola Co., 461 So.2d 452 (La.App. 5 Cir.1984).
In regard to plaintiffs' first assignment of error, LSA-C.C.P. art. 1466 provides that a party may serve on another party a written request for admissions of the truth of any relevant matter of fact for purposes of the pending action. Failure of the party to whom the request is directed to answer or object to the request within 15 days of service conclusively establishes that fact. LSA-C.C.P. arts. 1467,1468. Upon motion, the court may permit the admission to be withdrawn or amended when presentation of the merits will be subserved thereby and no prejudice will result to the party who obtained the admission. C.C.P. art. 1468.
Admissions may be used to establish uncontradicted facts or controversial issues which constitute the crux of the matter in litigation. Succession of Rock v. Allstate Life Ins. Co., 340 So.2d 1325 (La. 1976); Remondet v. Reserve Nat. Ins. Co., 433 So.2d 792 (La.App. 5 Cir.1983), writ denied, 441 So.2d 216 (La.1983). When the party receiving the request for admissions fails to respond to the request by any means, the fact is deemed admitted. Succession of Rock v. Allstate Life Ins. Co., supra; Remondet v. Reserve Nat. Ins. Co., supra. However, in Succession of Rock, the Louisiana Supreme Court pointed out that the codal articles do not require a party to utilize a particular form to respond to the request. In Voisin v. Luke, 249 La. 796, 191 So.2d 503 (1966), the Court considered verified exceptions filed prior to the answer appropriate answers to the request. When the answers have been filed late, however, the courts in O'Regan, III v. Labat, 379 So.2d 78 (La.App. 4 Cir.1980), and D.H. Holmes Co., Ltd. v. Dronet, 432 So.2d 1135 (La.App. 3 Cir.1983), stated the penalty attaching to the failure to file within the prescribed period should not result in a per se or automatic admission of fact. In those decisions, the courts erroneously relied upon a statement made by Voisin to the effect that the device should not be applied to a controverted legal issue going to the heart of the case. That statement was rejected as a rule of law by the Louisiana Supreme Court in Succession of Rock decided ten years later.
On the other hand, we agree that hypertechnicalities do not serve justice and that the articles should not be applied automatically when the party answers untimely. Under those circumstances the question should be whether the merits of the action would be subserved by allowing the untimely answer to constitute an intent to withdraw the answer. See C.C.P. art. 1468; Hoskins v. Caplis, 431 So.2d 846 (La.App. 2 Cir.1983).
In this case, an agent for the campground was served with the request on January 28, 1986. The manager and agent answered the request on February 28, 1986. Thus, the answer was eight days late. Prior to that time, the record indicates that defendants repeatedly and vigorously denied the allegations in the request for admissions. Two months after the request was served, the court heard the motion for summary judgment which was filed in 1985 by defendants. Between the time the answers were filed and the motion was heard, plaintiffs argued that the fact of the location of the child's death had been admitted by defendants' untimely answer. After the hearing the trial court rejected plaintiffs' contention, but failed to state a reason for doing so. Although defendants failed to file a motion to withdraw, we conclude the trial judge in his discretion under C.C.P. art. 1468 allowed the answers to constitute a withdrawal of the admissions. After our review, we find the trial judge did not abuse his discretion, particularly in view of the fact that plaintiffs were unable to show any prejudice resulting from the trial court's action.
Plaintiffs secondly argue that the affidavits were incompetent because under LSA-C.C.P. art. 967, affidavits submitted in conjunction with a summary judgment must be made on personal knowledge of the affiant; must state facts as would be admissible in evidence; and shall show affirmatively that the affiant is competent to testify to the matters stated therein. In Rhines v. Carpenter, 465 So.2d 884, 887 (La.App. 2 Cir. 1985), the court defined personal knowledge *578 for purposes of a summary judgment as "something which the witness actually saw or heard as distinguished from something he learned from some other person or source."
Three affidavits were submitted in this case. Ronald Gillen, one of the owners of the property, stated he was familiar with the property and based on information given to him by two eyewitnesses concluded the accident occurred on adjacent property. Gerald Fussell, a surveyor hired by the Gillens, arrived at the same conclusion after surveying the property. He stated his conclusion was based on information he received from Bruce Albert, who showed him where he retrieved the body. Bruce Albert simply stated he was the person who found the body and that he showed Mr. Fussell that location.
In opposing defendants' affidavits, plaintiffs submitted a statement made by Roy Smith, the campground manager, in his deposition. Mr. Smith stated the water in the creek tended to fluctuate from a depth of 2 feet to 15 feet, and that the fluctuation could occur from day to day. The survey, plaintiff points out, was taken at least two years following the accident.
After reviewing the affidavits in question, it is apparent that Mr. Gillen's affidavit is based purely on hearsay. Thus his affidavit is incompetent to establish the factual conclusion that the accident occurred on adjacent property since it was not based on personal knowledge. In addition, Mr. Fussell's opinion in his affidavit is also based on information provided from another source and would normally be incompetent. However, in this case the question arises as to what effect his status as an expert may have on the hearsay rule.
As a general rule, an expert is not permitted to base his opinion on factual information provided by persons outside of court. Barley v. State, through State Dept. of Hwys., 463 So.2d 689 (La.App. 4 Cir.1985); Rhines v. Carpenter, supra. However, occasional exceptions to this rule can be found in the jurisprudence, albeit, for the most part in criminal cases. State v. Austin, 282 So.2d 711 (La.1973); State v. Fallon, 290 So.2d 273 (La. 1974); State v. Berry, 324 So.2d 822 (La.1975), cert. den. 425 U.S. 954, 96 S.Ct. 1731, 48 L.Ed.2d 198 (1976).
In a negligent homicide case, the court in State v. Austin allowed an accident reconstruction expert to testify and give an opinion based on information provided to him by others. Likewise in State v. Fallon and State v. Berry, physicians testifying as experts were permitted to base their opinions on reports of other doctors and nurses in forming their opinions. The sole civil case which allowed this type of testimony was decided by the Fourth Circuit in Barley.
Concerned with the question of whether an estimate provided by the expert was admissible despite the fact that it was based on information provided by a leveling subcontractor, the court in Barley examined the criminal cases cited above and Rule 703 of the Federal Rules of Evidence. Rule 703 permits an expert to base his opinion on inadmissible evidence, "[i]f of a type reasonably relied upon by experts in the particular field * * *."
An opposite result was reached in Rhines. However, unlike Barley, the Rhines case involved a summary judgment. There the Second Circuit Court of Appeal held inadmissible a physician's affidavit offered to show that the defendant hospital was unaware of a particular patient's violent tendencies. While the court stated the opinion was not made on personal knowledge since it was based on medical records of the hospital, it also pointed out that a summary judgment may not be used to establish facts such as motive, intent or knowledge, which was the issue in that motion for summary judgment. See Verrett v. Cameron Telephone Co., 417 So.2d 1319 (La.App. 3 Cir.1982).
In this case, Mr. Fussell relied upon the information provided by a diver to locate the site of the body's recovery, and thereafter to conclude the site was not within the defendants' property boundary. He necessarily had to rely upon the diver's hearsay statement in order to give that opinion. Where the hearsay statements of this type might not be admissible under certain circumstances, such as a boundary *579 dispute, we find an exception to the hearsay rule arises under these facts. Consequently, we hold the affidavits of Mr. Fussell and Mr. Albert were competent and properly considered by the trial judge.
Finally, plaintiffs assert that regardless of whether the accident occurred on or off the defendants' property, defendants are not entitled to a judgment as a matter of law. In this regard, plaintiffs argue the jurisprudence does not automatically relieve property owners of liability for injuries occurring on adjacent property.
Our examination of the jurisprudence discloses no cases directly on point with our facts.[1] However, the parties have cited and we have found several cases involving the liability of a property owner for injuries sustained on adjoining property which are somewhat analogous.
In Banks v. Hyatt Corp., 722 F.2d 214 (5 Cir.1984), the defendant hotel owner was found liable for the death of one of its patrons who was murdered on the sidewalk in front of the hotel. There, the federal Fifth Circuit Court of Appeals analyzed the Louisiana caselaw and determined that Louisiana law takes a broad view of the duty of the invitee by an owner or possessor of land when the danger to the invitee is located on adjacent land, at least where the injury occurs on an access to the owner's property. After reviewing the evidence, the court found the defendant breached a duty to warn its patrons of criminal activity in the neighborhood. Likewise, in Lewis v. Fireman's Fund Ins. Co., 342 So.2d 244 (La.App. 4 Cir.1977), the operator of a playground was found to have breached a duty to warn of a hazard or to remedy a known hazard created by the frequent overflowing of the banks of an adjacent canal. In that case, a child playing in the shallow water along the submerged bank stepped into the deeper water of the canal and drowned.
The facts in Gauthier v. Aetna Casualty & Surety Company, 286 So.2d 103 (La. App. 3 Cir.1973), and Arata v. Orleans Capitol Stores, 219 La. 1045, 55 So.2d 239 (1951), involved injuries occurring on defective sidewalks abutting the respective defendant's property. The Gauthier court found the defendant did not breach a duty since he neither caused the defect in the sidewalk nor did he perform some negligent act. The opposite result was obtained in Arata where the defendant caused the defective condition of the sidewalk.
The defendant in Lowe v. Thermal Supply of Shreveport, Inc., 242 So.2d 351 (La. App. 2 Cir.1970), was also found liable for plaintiff's injuries, although the injury occurred on an empty lot adjoining defendant's refrigeration business. Because the defendant's customers were forced to cross the lot to retrieve items left to be picked up behind the business, the court found the defendant owed a duty to exercise ordinary care to protect the customers from reasonably foreseeable hidden dangers. On the other hand, in Lanclos v. Tomlinson, 351 So.2d 1218 (La.App. 3 Cir.1977), and Cothern v. LaRocca, 255 La. 673, 232 So.2d 473 (1970), the defendants were relieved of liability because the courts found neither defendant breached a duty to the particular plaintiff. The plaintiff in Cothern fell in an open manhole in the parking lot of a motel which adjoined the defendant's restaurant, the plaintiff's destination. The Lanclos plaintiff was injured while crossing a wooden bridge spanning a ditch which was not adjacent to, but was near, defendant's property.
In the cited cases, the courts recognized the general rule that a landowner is not usually held liable for injuries which occur from defects on adjacent property. However, they also recognized that a particular defendant cannot escape liability by the mere fact of his status as a nonowner. The question, like any other action under LSA-C.C. art. 2315, was and is whether defendant was negligent in any manner. In order to make that determination, the duty-risk analysis must be employed which requires an examination of four factors: (1) whether defendant's conduct was a cause *580 in fact of the accident; (2) whether defendant owed a legal duty encompassing the particular risk of harm to which plaintiff was exposed; (3) whether defendant breached that duty; and (4) what damages plaintiff sustained. Forest v. State, thru Louisiana D. of Transp., 493 So.2d 563 (La.1986).
The depositions submitted to support the motion for summary judgment undisputedly show that Chad Savoie and the 14-year-old victim Richard were good swimmers. They spoke to the scuba diver, Bruce Albert, on the evening prior to the accident. Through that discussion they were made aware of the hole's existence and that its depth was undetermined. When the drowning occurred, the boys were attempting to touch the bottom of the hole. Finally, it was an undisputed fact that the warning signs posted on the beach were easily seen and understood by the people using the facilities of the campground. After analyzing the facts of this case under the duty-risk analysis, we do not find any basis upon which to find the defendants were negligent. Consequently, we hold the summary judgment was properly granted by the trial judge.
Accordingly, the summary judgment is hereby affirmed. Appellant is to pay costs of this appeal.
AFFIRMED.
NOTES
[1] We recognize that LSA-R.S. 9:2791 and 9:2795 limit the liability of owners of land used primarily for recreational purposes. However, that liability does not apply here since the camp ground is a commercial recreational enterprise operated for a profit and those ventures are excluded from the limitation of liability.