JAMES F. McKAY, III, Judge.
The plaintiff, Norine Baker, appeals the trial court’s judgment, granting of the defendant’s, Murphy Oil U.S.A. Inc. (Murphy), motion for summary judgment.
On February 5, 1999, Norine Baker was returning to her home after a Mardi Gras parade. She was walking on the right hand side of Judge Perez Highway near the Murphy’s refinery heading toward Mereaux, Louisiana. As it was 9:00 p.m., and there was low visibility, she used Murphy’s cyclone fence, which was approximately 10-20 feet from the edge of the shoulder of Judge Perez Highway, as a guide and to avoid traffic. As she traversed this area she fell into a ditch and allegedly sustained injuries. Murphy leases the property where its refinery is located from Emile Meraux and Harry M. Fisher. The St. Bernard Parish Police Jury granted right of way servitude on a portion of this leased land, to the State of Louisiana, through the Department of Transportation and Development (DOTD); this portion is the area where the alleged incident occurred.[1] The DOTD designed and built the drainage canal and culvert as part of the drainage system, which goes 13under the highway, to prevent flooding. The DOTD took responsibility for maintaining this area including paying the Parish of St. Bernard to cut the grass. Furthermore, employees of the DOTD testified that they were sent to this area to inspect it for problems. Murphy admitted that they paid a private company, St. Tammany Maintenance, to sporadically cut the grass in the area for the purpose of aesthetics and as a good will commitment to the parish.
*331 The plaintiff contends that the trial court erred in granting the defendant’s summary judgment alleging that material issues of fact are in dispute. The alleged factual dispute questions if Murphy participated in maintenance of the land where the plaintiff was allegedly injured, and if Murphy created a dangerous condition due to the runoff of water from their plant.
The appellate court standard of review of summary judgments is de novo. Smith v. Our Lady of the Lake Hospital, 639 So.2d 730 (La.1994); Walker v. Kroop, 96-0618 (La.App. 4 Cir. 7/24/96), 678 So.2d 580. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Two Feathers Enterprises v. First National Bank, 98-0465 (La.App.4.Cir.10/14/98), 720 So.2d 398, 400. This procedure is now favored and shall be construed to accomplish these ends. La. C.C.P. art. 966(A)(2). This standard of review requires the appellate court to look to the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, to show that there is no genuine issue as to a material fact, and |gthat the mover is entitled to a judgment as a matter of law. La. C.C.P. art. 966(B). In order to prevail on a motion for summary judgment, the movant must show “that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact” South Central Bell Telephone Co. v. Sewerage and Water Board, 95-0949 (La.5/19/95), 654 So.2d 1090. Both the evidence and all inferences drawn from the evidence must be construed in favor of any party opposing the motion, and all doubt must be resolved in his favor. When faced with a supported motion for summary judgment, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967;, Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326. The initial burden of proof remains with the mover and is not shifted to the nonmoving party until the mover has properly supported the motion and carried the initial burden of proof. Only then must the court consider the evidence in support of the opposition showing the existence of specific facts establishing a genuine issue of material fact. Scott v. McDaniel, 96-1509 (La.App. 1st Cir.5/9/97), 694 So.2d 1189, 1191-92. If the mover carries the burden and the non-moving party fails to show in his opposition that there is no genuine issue of material fact, summary judgment should be granted. La.Code Civ. P. arts. 966 and 967. Pursuant to La. C.C.P. art 966(C)(2), what the mover of a summary judgment must prove depends on which party will bear the burden of proof at trial. The defendant need not negate all essential elements of the plaintiffs claim, action or defense, but can rather simply point out to the court that there is an absence of factual support for one or more elements of the claims. Once Murphy negates a necessary element of the plaintiffs claim, the burden then shifts to Ms. Baker to produce factual support sufficient to establish that she' will be able to satisfy her evidentiary burden of proof at trial. Moody v. City of New Orleans, 99-0708 (La.App. 4 Cir. 9/13/00), 769 So.2d 670, 671. “Whether or not a true ‘material fact’ exists ... is based on whether [it is] a fact ‘whose existence or nonexistence may be essential to appellant’s cause of action under the applicable theory of recovery, ie. one that would matter on trial of the merits.’ ” Id. at 671.
There are two theories of liability available to the plaintiff. One is negligence under La. C.C. arts. 2315 and 2316. The *332 other is under a strict liability theory pursuant to La. C.C. art. 2317. La. C.C. art. 2317 provides: “We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody.” This, however, is to be understood with the following modifications.' La. C.C. art. 2317.1[2] now provides: “The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he' failed to exercise such reasonable care.” This provision was added by Acts 1996, 1st Ex.Sess. No. 1 § 1, effective April 16, 1996 and was in effect at the time of the plaintiffs alleged accident in 1999.
Under either theory the plaintiff must prove that the condition of the thing presented an unreasonable risk of harm, or was defective and that this condition was the cause in fact of the injuries that the plaintiff sustained. She must also prove that the thing in question was owned by the defendant and/or was in the defendant’s care, custody, and control.
La. C.C. art. 2317 “imposes liability” based on a person’s relationship of custody (garde) to a defective thing which creates an unreasonable risk of injury to others.” Doughty v. Insured Lloyds Insurance Company, 576 So.2d 461, 463 (La.1991). Consequently, in determining liability when a right of way is involved, the courts look to determine which party, if any, has actual control over the property. In Doughty, the Louisiana Supreme Court emphasized that the “things in one’s care,” referenced in La. C.C. art. 2317, are “those things to which one bears such a relationship as to have the right of direction and control over them, and to draw some kind of benefit from them.” Doughty, supra, quoting King v. Louviere, 543 So.2d 1327, 1329 (La.1989).
In the instant matter the plaintiff argues that the trial court erred in granting Murphy’s motion for summary judgment. She asserts that her injury was a result of the condition of the drainage ditch. As a basis for her argument she expounds the supposition that Murphy’s paying for the grass to be sporadically cut is indicia that the ditch was in the care, custody, and control of Murphy. She also expostulates that the erosion to the area was the result of runoff from Murphy’s refinery and that this erosive condition of the drainage canal located adjacent to Murphy’s fence was the cause in fact of her injuries.
Murphy hired Hugh B. McCurdy III of W.E. Professional Surveys to. research and survey the area in question. His report confirms that the incident occurred on the land, which is owned by the Fishers, and that the DOTD had a right of way servitude to that tract of land that was granted by the St. Bernard Parish Police Jury, and Murphy leased with this encumbrance attached. Murphy also hired Ralph Junius Jr., an engineer with the firm of Linfield, Hunter & Junius, to inspect the area where the plaintiff fell. He opined that the plaintiff fell into a drainage ditch, which the DOTD had designed and constructed and that this ditch drains into the culvert which was constructed in accordance with DOTD construction drawings. *333 He also concluded that the area was within the DOTD’s right of way servitude.
Murphy also took the depositions of Rita Knott and Marvin Hess who were both employed by the DOTD as road inspectors, and they testified that the accident occurred in an area within the servitude. Ms. Knott inspected that stretch of highway about every ten days and Mr. Hess inspected it about every thirty days. They both also testified that if there was a problem the only corrective action that needed to be taken was to place a sign warning the pedestrians, and that this corrective action was the responsibility of the DOTD.
The plaintiff attempts to establish that Murphy had care, custody, and control over the area where the alleged incident occurred based on evidence that Murphy paid St. Tammany Maintenance Company to cut the grass. Contrarily, Murphy Oil asserts that it did not have care, custody, and control over the area merely because it sporadically paid St. Tammany Maintenance Company to cut the grass in the area. Murphy asserts that it did this as a good neighbor policy and for aesthetics. From the depositions and the reports presented by Murphy it is abundantly clear that the care, custody, and control of this area was the responsibility of the DOTD. This Court noted in Oster v. Department of Transp. and Development, State of La., 582 So.2d 1285 (La.1991), “As to the area off the shoulder of the road, but within the right of way, DOTD owes a duty to maintain the land in such a condition that it does not present an unreasonable risk of harm to motorists using the adjacent roadway or to others, such as pedestrians, who are using the area in a reasonably prudent manner.” The defendant has satisfied its burden of proof in that it did not have care, custody, and control over this portion of land, and the plaintiff has failed to establish that there are genuine issues of material fact in dispute in this matter.
Plaintiffs second assertion is that Murphy’s runoff caused erosion to this drainage ditch, which was the cause in fact of her injury. We disagree. Murphy clearly has no ownership interest in the culvert and drainage ditch at issue in this lawsuit nor any garde, care, custody or control. Murphy’s refinery is located next to the DOTD’s right of way. The majority of the jurisprudence in this area addresses issues dealing with adjacent or abutting property owners, defective sidewalks or automobile accidents involving drainage canals, which are barely analogous to the issue at hand. As a general principle “a landowner is not usually held liable for injuries which occur from defects on adjacent property.” Jones v. Gillen, 504 So.2d 575, 579 (La.App. 5 Cir.1987).
In the case sub judice it was clearly established that the DOTD was granted a right of way to the piece of property in question. It is also clear that Murphy Oil leased the property from the Fisher family with this right of way encumbrance attached. The DOTD designed and constructed the ditch as part of the drainage system for Judge Perez Highway. The DOTD had weekly inspection of the area and admitted responsibility for maintaining the area. Murphy had no authority to change, redesign or relocate this drainage canal or culvert. The fact that the defendant may have benefited from the drainage canal for some degree of run off from their plant is of no moment in this instance. Accordingly, as a matter of law Murphy cannot be held responsible under La. C.C. art. 2317 for damages allegedly caused by defects on the DOTD’s right of way.
The trial court was presented with the affidavits of the DOTD’s employees, Murphy employees and surveyor’s reports *334 and granted the defendant’s motion for summary judgment. Clearly, from a careful review of these documents, Murphy did not assume care, custody, and control over this area simply because they | ^occasionally cut the grass for aesthetic purposes or that the natural runoff of water from the adjacent property to the drainage canal created erosion which was the cause in fact of the plaintiff’s injuries. Common sense dictates that the drainage canal was specifically created for social and public utility to keep land runoff and flooding from reaching the highway and creating a road hazard. Therefore, the creation of the drainage canal did not create an unreasonable risk of harm to this plaintiff. In Oster, the Louisiana Supreme Court examined that unreasonable risk or harm issue versus social utility concerns, “The unreasonable risk of harm criterion entails a myriad of considerations and cannot be applied mechanically.” Oster, supra at 1288. “Although courts, including this Court, have described the unreasonable risk of harm criterion as requiring the court to balance the likelihood and magnitude of harm against the utility of the thing, the balancing test required by the unreasonable risk of harm criterion does not lend itself well to such neat, mathematical formulations.” Id. at 1289. “In addition to the likelihood and magnitude of the risk and utility of the thing, the interpreter should consider a broad range of social, economic, and moral factors including the cost to the defendant of avoiding the risk and the social utility of the plaintiffs conduct.” Id. “One cannot be protected from all risks.” Graves v. Page, 96-2201 (La.11/7/97), 703 So.2d 566, 573. “This Court must decide which risks are unreasonable.” Id.
To elaborate on the issue of unreasonable harm the Louisiana Supreme Court in Dupree v. City of New Orleans, 99-3651 (La.8/31/00), 765 So.2d 1002, noted:
ImThere is no fixed rule for determining whether the thing presents an unreasonable risk of harm. To assist the trier-of-facts, we note that many factors are to be considered and weighed, including: (1) the claims and interests of the parties; (2) the probability of the risk occurring; (3) the gravity of the consequences; (4) the burden of adequate precautions; (5) individual and societal rights and obligations; and (6) the social utility involved. See Boyle v. Board of Supervisors, L.S.U., 96-1158 (La.1/14/97), 685 So.2d 1080; Langlois v. Allied Chem. Corp., 258 La. 1067, 249 So.2d 133, 140 (1971) (“The activities of man for which he may be liable without acting negligently are to be determined after a study of the law and customs, a balancing of claims and interests, a weighing of the risk and the gravity of harm, and a consideration of individual and societal rights and obligations.”); see also King, 543 So.2d at 1328-29. However, we have cautioned that the trier-of-fact cannot apply the unreasonable risk criterion mechanically. Entrevia, 427 So.2d at 1146; Landry v. State, 495 So.2d 1284 (La.1986). This criterion is a concept employed to symbolize the judicial process of reaching an intelligent and responsible decision and deciding which risks the codal obligations encompass from the standpoint of justice and social utility. Celestine v. Union Oil Co. of Cal., 94-1868 (La.4/10/95), 652 So.2d 1299; Entrevia [v. Hood], 427 So.2d 1146 (La.1983).
The social advantages and public utility of the creation of this drainage canal when compared with the protection of pedestrians from falling into drainage ditches is nonsensical. It is a natural consequence of urbanization of rural areas, where drainage improvements increase runoff and private water from naturally filtering into the ground, necessitating the construction of *335 drainage canals. Plaintiff was aware that this area was a drainage canal yet made a conscious decision in the dark of the night to traverse the area some 10-20 feet from the roadway; she used the right of way in an imprudent manner. The ditch was neither designed nor constructed for use by pedestrians nor was Murphy’s . cyclone fence, which was 10-20 feet from the highway, designed as a guardrail for pedestrians seeking to traverse a drainage canal. Murphy simply has no duty to this pedestrian to protect her from this type of injury.
^J^For the above stated reasons we affirm the ruling of the trial court granting the defendant’s motion for summary judgment.
AFFIRMED.

. The St. Bernard Parish Police Jury had given the DOTD a right of way to this portion of land prior to the lease between Murphy Oil and the Fishers. The ditch where plaintiff fell is located within this right of way. The purpose of this servitude was to create a drainage canal.

. Strict liability under La. C.C. art. 2317 was subsequently amended and a plaintiff is now required to prove negligence (2317.1). See Greenhouse v. C.F. Kenner Associates Ltd. Partnership, 98-0496, (La.App. 4 Cir. 11/10/98), 723 So.2d 1004, 1007.